UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JACK GARCIA | § § § | |
| **Plaintiff,** | § § | |
| v. | § § | Civil Action No.  1:21-CV-20 |
| SAN BENITO CONSOLIDATED INDEPENDENT SCHOOL DISTRICT, | § § § § | |
| **Defendant.** | § | **JURY REQUESTED** |

## ORIGINAL COMPLAINT

**COMES NOW, Plaintiff, JACK GARCIA,** and files this, his Original Complaint and in support thereof would show as follows:

### I. NATURE OF ACTION

1. This is an action under the United States Constitution for violation of Plaintiff's rights under the First Amendment.

2. Specifically, while acting under color of law, Defendant took adverse employment actions against Plaintiff's employment in violation of his protected First Amendment rights.

### II. JURISDICTION AND VENUE

3. Jurisdiction of this Court is invoked pursuant to 28 USC Sections 451, 1331, 1337, 1443, 1345, 1441 and 42 USC 1983.

4. Venue is proper under 28 U.S.C. Sec. 1391(a)(1) & (2) because the employment practices and actions alleged to be unlawful were and are currently being committed within the

Jurisdiction of the United States District Court for the Southern District of Texas, Brownsville Division.

### III. PARTIES

5.     Plaintiff, JACK GARCIA, is a resident of Cameron County, Texas.

6.     Defendant, SAN BENITO CONSOLIDATED INDPENDENT SCHOOL DISTRICT (SBCISD), is a Texas school district and governmental entity located in the State of Texas and within the Southern District of Texas.

### IV. FACTUAL ALLEGATIONS

7.     Plaintiff Jack Garcia worked for Defendant SBCISD for 22 years. He has lived in the San Benito community most of his life and served as member of the San Benito City commission from 2008 to 2011.

8.     Plaintiff's aunt Mary Lou Garcia, who was elected to the San Benito CISD school board in May 2017, was on the SBCISD school board when Plaintiff was terminated. She was a vocal critic of the superintendent, Dr. Nate Carman, and was not aligned with the school board's political majority. Board Member Garcia is a retired SBCISD teacher and during her teaching career at San Benito CISD, she served as a chess team sponsor and chess coach for many years at Miller Jordan Middle School. Because of her many years of dedication to the Miller Jordan chess program and to her previous students, she has been a strong advocate for San Benito CISD afterschool program and the chess team in particular. After she retired, she volunteered her time as a retired teacher and board member by attending in and out of town chess tournaments as a volunteer chaperon.

9.     As stated above, Plaintiff Jack Garcia had been an employee with San Benito CISD for twenty-two (22) years. He served twenty (20) years with the San Benito CISD

2

afterschool program, four (4) years as a site coordinator for the program and the last sixteen (16) years as the director of the afterschool program. The afterschool program provides students a safe environment for learning and performing enrichment activities that the students would have never been able to participate in without the program. The afterschool program is an award-winning program recognized by local, state and federal officials and it has received numerous accolades due to it contributing to the overall education of SBCISD students. Throughout his years with the district, Plaintiff Garcia has instrumental in securing millions of dollars in funding for the San Benito CISD afterschool program. In 2018, Mr. Jack Garcia was recognized as one of 15 educators in the United States as an afterschool ambassador. This appointment allowed Mr. Garcia to contribute important afterschool information to federal government and congressional officials. During his career at San Benito CISD, Mr. Garcia has received annual performance appraisals with very good ratings. Until the events leading to his termination on March 28, 2019, he had never had any adverse employment action taken against him.

10. In May of 2018, Defendant San Benito CISD simultaneously conducted a school board election and a $40 million bond election. Both elections were hotly contested and the bond election was considered by the public and local media as controversial and was publicized in the local media as a matter of public concern. Board member Garcia was in the political minority of the seven San Benito CISD school board and she openly opposed the board majority's political slate of candidates. She was the lone vote against the selection of the bond manager for the $40 million bond which, again, was highly controversial and much publicized. It was after this controversial vote, her opposition to the board majority's political state and her arguments against proposed budget reductions for the San Benito CISD afterschool program (which was directed by her nephew plaintiff Jack Garcia) that led the members of the majority of

the San Benito CISD school board to begin to attack her volunteer participation with the after school program in public at school board meetings. Board members of San Benito CISD majority and San Benito CISD Superintendent Dr. Nate Carman, who was aligned with the board's political majority, would publically scrutinize her participation as a chaperon on out of district chess tournament trips even though Board member Garcia had been an unpaid chess volunteer chaperon for many years. As a volunteer chaperon, Ms. Garcia did not violate any school district policy nor did she violate any state or federal law. Prior to the controversial bond manager vote and the open session attacks against her aunt by the board political majority members, Plaintiff Jack Garcia had received very good annual performance appraisals and had never had any adverse employment action taken against him.

11. As a result of his association with his aunt, Plaintiff was targeted by the Defendant school board's political majority. Specifically, San Benito CISD school district made false unfounded claims that Plaintiff had used school district funds to benefit his aunt Mary Lou Garcia as a teacher/chess sponsor and later, after she had retired, as a volunteer chaperon on school district chess tournament trips. In the notice of termination, the district stated that, since Plaintiff oversaw the chess program, he was the one would approve his aunt as a sponsor/chaperone. This is not true because it was the campus principal who would approve all of-campus trips. Superintendent Carman knew this yet he falsely alleged the contrary in Plaintiff's notice of termination. This is just another example of how, the superintendent, with the support of the majority San Benito CISD school board members, orchestrated a retaliatory scheme to publically slander and punish board member Mary Lou Garcia at the expense of her nephew Plaintiff Jack Garcia based with false statements of fact.

12. As part of Plaintiff Garcia's job responsibilities as district chess coordinator, Mr. Garcia made travel arrangements for student chess team travel to state and national competitions for over 15 years. These responsibilities predated the election of any of the current board political majority or Superintendent Carman. On January 28, 2019, as part as of his duties as afterschool program director, Plaintiff purchased $10,438.82 in non-refundable Southwest airline tickets for a high school national chess trip to Chicago, Illinois through Southwest airline group sales. Three days later on January 31, 2019 again, as a part of his duties as afterschool program director, Jack Garcia purchased $17,214.25 non-refundable Southwest Airline tickets through Southwest Airline Group sales for the prestigious Houston, Texas "Super State" chess tournament which is held every 3 to 4 years. Mr. Garcia's immediate supervisor, Assistant Superintendent Hector Madrigal, was aware of the purchase of the airline tickets and voiced no objection. Mr. Madrigal merely inquired whether the expense exceeded $50,000.00 since any amount above that would require board approval. Mr. Madrigal was also aware that board member Mary Lou Garcia would be attending as a volunteer on the "Super State" chess tournament because board member Garcia had been chaperoning the chess team for many years. Furthermore, Assistant Superintendent of Finance (Hilda Rendon) was aware of Mr. Garcia's plans to purchase the airline tickets because she verified the available credit limit on his school district issued credit card without any objection to the planned purchase.

13. On Monday, February 11, 2019, 12 days after the purchase of the tickets to Houston, Plaintiff Garcia was asked by Assistant Superintendent Madrigal whether Plaintiff Garcia had already purchased these tickets. When Plaintiff Garcia advised Mr. Madrigal that the tickets had already been purchased, Mr. Madrigal inquired whether the tickets had been bought with the school district credit card or whether through a district purchase order. Plaintiff Garcia

5

responded that the tickets had been purchased with the school district credit card, the same as he had always done. Later that same day, plaintiff Garcia received an email from the superintendent requesting Plaintiff's presence at a meeting for the next day, Tuesday February 12, 2019 at 9 am at the superintendent's conference room.

14   At that meeting, Dr. Carman stated that plaintiff Jack Garcia had purchased tickets from Southwest without prior approval for the Houston chess trip. Plaintiff Jack Garcia explained that he was merely following the same practice and procedure which he had followed in the past. Dr. Carman then stated that he had directed the assistant superintendent for finance Ms. Rendon to contact Southwest airlines to see if the district could cancel or receive credit for the tickets; he further advised that if the district was unable to get credit that he had directed assistant superintendent Rendon to contact the credit card company and explain it was an unauthorized purchase. Later that day, Plaintiff Garcia sent an email to Dr. Carman asking him to reconsider the option of notifying the credit card company and claiming that it was an unauthorized purchase. In the email, Plaintiff Garcia expressed concern to Dr. Carman about giving the bank the impression that Plaintiff Garcia had made the purchase without authority or for an inappropriate purpose. Dr. Carman never responded to this email. Later that evening, assistant superintendent Hector Madrigal asked plaintiff Jack Garcia why he had written the email concerning the reconsideration of the unauthorized purchase. Plaintiff Jack Garcia expressed his concern about making unsubstantiated and false representations that unauthorized purchases were made in connection with the Southwest airline tickets purchased for the chess group.

15.   On February 13, 2019, Superintendent Carman issued a reprimand to Plaintiff Garcia. The reprimand addressed the various trips set forth above as well as the expenditures

and procedures necessary for compliance with district policies and purchasing procedures. The letter directed Plaintiff "to cancel the airline tickets (to Houston), reduce the number of adult sponsors, follow all applicable SBCISD policies and procedures related to travel requests, and to follow all policies and procedures related to the use of SBCISD credit cards." The letter concluded by stating, "Your current actions, as well as a failure to meet these expectations and follow these directives in the future, may be used in determining further action, including, but not limited to, suspension or termination." The reprimand led Plaintiff to believe that, as long as he complied with the directives and followed policies and procedures in the future relating to purchasing procedures and travel, there would not be any further adverse action.

16. The issue of Plaintiff's reprimand and the cancellation of the flights for the Houston tournament became a public issue on social media and in the local newspaper. The "Super State" chess tournament in Houston turned into a media nightmare for SBCISD's school board. First of all, the program's parents were upset that the plane trip had been cancelled and that Plaintiff had been reprimanded for arranging the trip. The cancellation of the plane tickets issue was all over the local social media outlets and highly discussed. It got worse when, on the return bus trip, the charter bus broke down. The students were stuck on the highway in the heat for over four hours while waiting for arrangements for another bus. Because the district was blamed by the chess team parents and the media for the fiasco, the superintendent, (along with the board majority) sought to unfairly shift the blame to the Plaintiff. Again, this is another act of retaliation by the Defendant's school board's political majority to retaliate against the Plaintiff.

17. On February 15, 2019, Plaintiff Garcia received an email from Dr. Carman accusing the Plaintiff of contacting individual San Benito CISD board members regarding Mr.

7

Garcia's intent to appeal or file grievance relating to the reprimand. Dr. Carman attached Board Policy DGBA Local to the email which states under the section "Direct communication with board members:"

"Employees **shall not be prohibited** from communicating with a member of the Board regarding District operations except when communication between an employee and a Board member would be inappropriate because of a **pending hearing or appeal** related to the employee." (Emphasis added).

In the email, Dr. Carman further directed plaintiff Garcia to adhere to this policy. First of all, Dr. Carman never bothered to ask Plaintiff for his version of events. Had he even bothered to exercise the most rudimentary principles of fairness, he would have discovered that Board Member Janie Sylva contacted Plaintiff **first** to ask question about District operations regarding the afterschool program. Plaintiff advised Board Member Sylva that he would look into her concerns and get back to her. Plaintiff called her back with responses to her questions. During that conversation, Board Member Sylva asked Plaintiff "how things were going?" Since, at this time, the issue of Plaintiff's reprimand and the Houston chess trip fiasco were all over social media and the local newspaper, Plaintiff simply responded that he was going to file a grievance over the reprimand. No grievance had been filed at the time of this conversation and Dr. Carman, given his level of education, had to know that Plaintiff did not have a **"pending hearing or appeal"** at the time he issued the email/reprimand. Once again, the superintendent misstated facts and construed board policy in order to further the retaliatory scheme of the political majority of the board of trustees.

18.     On February 20, 2019, five days after advising a board member who was part of the political majority that he was going to grieve (i.e. contest the reprimand), Superintendent Carman advised Plaintiff Garcia that he was being put on administrative paid leave pending a thorough investigation into unauthorized use of the SBCISD credit card. Furthermore, Plaintiff

8

was directed not to speak to any district staff, SBCISD students, district board of trustees or the media. Plaintiff was told at this meeting that assistant superintendent Hector Madrigal and assistant superintendent Hilda Rendon would be conducting the investigation and that they would report their findings directly to Superintendent Carman.

19. On February 26, 2019, Plaintiff Jack Garcia filed a grievance related to the February 13, 2019 reprimand. In the grievance, Plaintiff directly disputed the allegations contained in the reprimand. It stated that the reprimand, among other things, was based on inaccurate and misleading information. The grievance further took issue with the fact that the Superintendent, at the request of a board member who was politically opposed to Plaintiff's aunt, publically condemned Plaintiff at a school board meeting by repeating the false allegations contained in the reprimand. Since personnel matters are usually discussed in closed session and not in public, it was highly irregular to do otherwise. Again, this is proof of the board's political majority's intent to embarrass Board member Garcia by publically disparaging the Plaintiff. It should further be noted that this discussion of items not on the agenda is a violation of the Texas Open Meetings Act. This action is subject to possible criminal penalty. Plaintiff reported this violation to the Cameron County District Attorney. The fact that the school board and the superintendent were so willing to violate the Texas Open Meetings Act likewise underscores the extent to which the Defendant school board's political majority was willing to go in order to cause harm to Board member Garcia and Plaintiff by association.

20. The investigation, which was supposed to be about an unauthorized use of a SBCISD district credit card, turned out to be a political "witch hunt" with the superintendent orchestrating the investigation on behalf to the school board's political majority. It was clear by assistant superintendent Hector Madrigal's notes, a notarized letter and assistant superintendent

9

Hilda Rendon's financial documentation that they provided to Superintendent Carman that board member Mary Lou Garcia was a target of plaintiff Jack Garcia's investigation. Specifically, on March 19, 2019, while he was on administrative leave, Plaintiff received a set of questions to which he needed to respond in writing. The letter states that several concerns have come to light as a result of the investigation. Out of the seven questions, only one question directly involved the SBCISD credit card. One question involved Plaintiff Garcia's aunt, Board Member Mary Lou Garcia during his lunch break at a local t-shirt store. The question gives a false impression that the Plaintiff was visiting Board Member Mary Lou Garcia during working hours. The local t-shirt owner also happens to be a strong critic of the current board majority and the superintendent. This shop owner had been previously mentioned disparagingly by Superintendent Carman at an afterschool program staff meeting on February 14, 2019.

21. Dr. Carman orchestrated a plan with the assistance of assistant superintendent Hilda Rendon to make a false insurance claim to the VISA liability waiver program. Specifically, a school district email sets forth how the assistant superintendent for finance, Hilda Rendon, was directed by Superintendent Carman to claim on an insurance affidavit that the $17,214.25 non-refundable Southwest airline tickets *did not* benefit the district. In order to support the false insurance reimbursement claim, the San Benito CISD school district claimed that it had to terminate Plaintiff Jack Garcia who had made the purchase for the District.

22. At the beginning of March of 2019, while Plaintiff Jack was on administrative leave, San Benito CISD business office began a campaign to address its lax enforcement of purchasing policies and procedures since Plaintiff's actions were not limited to him alone but were also practiced by all the other school district departments. The San Benito CISD business office began introducing new business forms, sending emails giving new directives on purchase

orders and had district department secretaries attend a new training. These after the fact actions by the business office demonstrate how the practices which Plaintiff Garcia had engaged in were district-wide.

23. On March 26, 2019, Plaintiff Jack Garcia had his first grievance hearing with Superintendent Carman. The following day, Superintendent Carman denied Plaintiff's grievance.

24. Because of plaintiff Jack Garcia association to SBCISD board member Mary Lou Garcia and because he chose to invoke his constitutional right to seek redress for his grievance, Plaintiff Jack Garcia was terminated on March 28, 2019, two days after he presented his Level 2 grievance to the superintendent.

25. Documentation relating to San Benito CISD's justification for Plaintiff termination consisted of school district payroll records and previous chess tournament information. Some of the documentation went back as far as 2012 when Board Member Garcia was still a teacher at San Benito CISD. Many of the documents used against Plaintiff and Board Member Garcia have the signatures of approval by both Assistant Superintendent Hector Madrigal and Superintendent Carman, even though it was Assistant Superintendent Madrigal who had conducted the investigation into Plaintiff Jack Garcia. San Benito CISD school district made false unfounded allegations claiming that Plaintiff had used school district funds to benefit his aunt Mary Lou Garcia as a teacher/chess sponsor and as a volunteer chaperon and board member on school district chess tournament trips, even though Madrigal had approved these trips. This biased investigation constituted part of the board majority retaliatory scheme to slander and punish San Benito CISD school board member Mary Lou Garcia at the expense of her nephew Plaintiff Jack Garcia.

26. The board president of a school district speaks for the board majority since it is a board majority that gives him the position of president. As further evidence of the retaliatory motivations of the board political majority, in a May 10, 2019, newspaper editorial by SBCISD board president Michael Vargas, he stated that Plaintiff Garcia is no longer with the district for not abiding by school board policy. He thus made it publically clear to the entire SBCISD community that Plaintiff had engaged in wrong-doing. Further, since this public announcement was made during the pendency of Plaintiff's grievance, School Board President Michael Vargas clearly announced to the community that he already made up his mind prior to Plaintiff Jack Garcia's school board grievance hearing that Plaintiff Garcia was guilty of wrongdoing.

27. During the months of June and July of 2019, Plaintiff began receiving phone calls and letters from a collection company demanding that the Plaintiff pay the $17,214.25 lost non-refundable Southwest Airline tickets. After much dispute by Plaintiff Garcia over who exactly was responsible for the loss for San Benito CISD, CHUBB insurance company announced on August 19, 2019 that it would conduct a formal investigation into San Benito CISD's false and fraudulent insurance claim. After a year and a half, CHUBB has concluded this investigation by no longer pursing collection proceedings against the Plaintiff.

28. Throughout the pending board appeal time period, Plaintiff denied any responsibility for the loss of the $17,214.25 non-refundable Southwest airline tickets. Furthermore, Plaintiff never requested that the San Benito CISD school district pay him the $17,214.25 non-refundable Southwest airline tickets funds in order to pay the collection agency or insurance company.

29. San Benito CISD board president Michael Vargas was in the school board majority, and very critical of Plaintiff's aunt, Mary Lou Garcia. As another example of how the

board political majority sought to embarrass and slander board member Garcia, school board president Vargas released a letter on August 13, 2019 to all San Benito CISD staff suggesting that Board Member Garcia of leaking information from executive session and falsely claiming that doing so is a criminal violation. But it is not crime to discuss contents of a closed session; it is only a crime to release the tape recording or the certified agenda of a closed session. Board president Michael Vargas' letter was an attempt to publically intimidate and humiliate board member Garcia during Plaintiff's grievance process. But Mary Lou Garcia stood firm on denying any such acts regarding these allegations. This action by the board president Michael Vargas was an effort to undermine jeopardize and deprive Plaintiff Garcia of a fair and impartial grievance as well as demonstrating the board majority's targeted vendetta against the Plaintiff by attacking his aunt.

30. On August 29, 2019, plaintiff Jack Garcia had his board hearing. The board, by majority vote denied the grievance thereby ratified actions of the superintendent in terminating Plaintiff.

## V. 42 U.S.C SECTION 1983

31. Section 1983 of Title 42 of U.S.C. provides that an individual may seek redress, by way of damages, against any person or persons who, under color of any law, statute, ordinance, regulation, or custom, knowingly subject such individual to the deprivation of any rights, privileges, or immunities, secured or protected by the U.S. Constitution or laws of the United States. The Plaintiff has been subjected to the deprivation of his Constitutional rights as set forth below.

## VI. VIOLATION OF FIRST AMENDMENT RIGHTS

### A. Political Retaliation

32. Paragraphs 7 through 30 are incorporated herein by reference. As stated above, the Plaintiff engaged in speech on matters of public concern and participated in political activities away from the job setting which are directly related to his right to freedom of association. Defendant denied Plaintiff's rights of freedom of speech and association under the First Amendment to the United States Constitution by retaliating against him for exercise of his protected speech and political association. Specifically, Plaintiff Jack Garcia suffered unconstitutional deprivation when he was wrongfully terminated by Defendant SBCISD. Because the actions causing harm to the Plaintiff were taken by the direction, approval and/or ratification by the Defendant SBCISD Board of Trustees, such act of retaliation against the Plaintiffs for his exercise of their First Amendment Rights formed an official policy of the Defendant SBCISD, rendering the school district liable to Plaintiff for his actual damages under 42 U.S.C. Section 1983.

### B. Retaliation for Seeking Redress of Grievances

33. Paragraphs 7 through 30 are incorporated herein by reference. As stated above, the Plaintiff invoked his constitutional right to seek redress of his grievances. Specifically, Plaintiff Jack Garcia suffered unconstitutional retaliation when he was wrongfully terminated by Defendant SBCISD. Because the actions causing harm to the Plaintiff were taken by the direction, approval and/or ratification by the Defendant SBCISD Board of Trustees, such act of retaliation against the Plaintiffs for his exercise of their First Amendment Rights formed an official policy of the Defendant SBCISD, rendering the school district liable to Plaintiff for his actual damages under 42 U.S.C. Section 1983.

## VIII. ACTUAL DAMAGES

34. By reason of the above actions alleged in paragraphs 7 through 33, Plaintiff has been damaged in an amount beyond the minimum jurisdictional level of this court, for which Defendant is jointly and severally liable.

## IX. COMPENSATORY DAMAGES

35. Pursuant to the federal statutes cited above, the Plaintiff is entitled to compensatory damages.

## X. ATTORNEYS FEES

36. Pursuant to the federal statutes under which Plaintiff sues, Plaintiff has been forced to retain the undersigned attorney to prosecute this claim on his behalf, and he is entitled to recover necessary and reasonable attorney's fees, costs of litigation, together with such additional attorney's fees as may be awarded by the Court and, in the event of an appeal, to the Fifth Circuit Court of Appeals and the United States Supreme Court and costs of Court.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that Defendant be cited to appear and answer herein, and for a **trial by jury**. Upon trial, Plaintiff prays for an award against Defendant for actual damages in excess of the minimum jurisdictional limits of this Court, front pay, back pay, reinstatement, equitable relief, together with exemplary damages, reasonable attorneys' fees, costs of court, pre-judgment and post-judgment interest, and entry of declaratory relief and an injunction barring Defendant from interfering with Plaintiff's job security and such other and further relief to which Plaintiff may be entitled.

Respectfully Submitted,

GUSTAVO L. ACEVEDO, JR.
814 Del Oro Lane
Pharr, Texas 78577
(956) 787-4441 (Telephone)
Texas State Bar No. 00829805
**Email: GLAcevedo@aol.com**

/S/ *Gustavo L. Acevedo, Jr.*_____
Gustavo L. Acevedo, Jr.
**Attorney for Plaintiff**